**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **3:24-CR-139** |
| | : | **(JUDGE MARIANI)** |
| MOHAMMED ZEIDAN, | : | |
| | : | |
| Defendant. | : | |

FILED
SCRANTON

NOV 1 4 2024

PER _____ 
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On June 21, 2023, a federal grand jury returned a Superseding Indictment in criminal case number 3:22-cr-72, charging Mohammed Zeidan, as well as Defendants Steven Wong, Joushton Rodriguez, Solomon Rodriguez, and Rachel Lysakowski, in a six-count indictment, which included two counts against Zeidan as follows:

○ Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951, against J. Rodriguez, S. Rodriguez, Wong, Zeidan, and Lysakowski, beginning on July 22, 2020 and continuing through September 2020 (Count 1).

○ Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, on or about August 29, 2020 (Count 3).

(3:22-cr-72, Doc. 98). An arrest warrant was issued for Zeidan that same day. (*Id.* at Doc. 103). On November 2, 2023, Zeidan was arraigned and entered a plea of not guilty and was ordered detained pending a detention hearing. (*See id.* at *Docs.* 131-134). On

November 6, 2023, following a detention hearing, Zeidan was released pending trial by

then-Magistrate Judge Karoline Mehalchick and ordered to submit to supervision by, and

report for supervision to, the U.S. Probation Office of the Eastern District of Pennsylvania.

(*Id.* at Doc. 138).

      The Order Setting Conditions of Release ordered Defendant's release subject to a

number of conditions, including that the "defendant must not violate federal, state, or local

law while on release" and that the "defendant must advise the court or the pretrial services

office or supervising officer in writing before making any change of residence or telephone

number." (3:22-cr-72, Doc. 138, at 1).  The Order further included Additional Conditions of

Release, directing that Defendant must:

- "continue or actively seek employment";

- "abide by the following restrictions on personal association, residence, or travel:

  Travel restricted to the Middle District of PA and Eastern District of PA unless

  otherwise approved by pretrial services officer";

- "not use or unlawfully possess a narcotic drug or other controlled substances defined

  in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner."

(*Id.* at Doc. 138, at 2).

      On May 8, 2024, the grand jury returned a six-count Second Superseding Indictment

against Zeidan, Wong, J. Rodriguez, S. Rodriguez, which charged Zeidan in three counts:

2

- o Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. §
  1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, beginning on July
  22, 2020 and continuing through September 2020 (Count 1).

- o Attempted Interference with Commerce by Robbery, in violation of 18 U.S.C. §
  1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, on or about August
  29, 2020 (Count 2).

- o Firearms Conspiracy, in violation of 18 U.S.C. § 924(o), against J. Rodriguez, S.
  Rodriguez, Wong, and Zeidan from on or about July 22, 2020 through January 8,
  2021 (Count 6).

(3:22-cr-72, Doc. 218).  Of note, Count 3 of the First Superseding Indictment was not included in the Second Superseding Indictment and the Second Superseding Indictment added a new Count 6, specifically a Firearms Conspiracy involving Zeidan.  At Zeidan's arraignment on the First Superseding Indictment, then-Magistrate Judge Joseph Saporito, without objection from the Government, allowed Zeidan to remain on pre-trial release.

On May 28, 2024, a federal grand jury indicted Zeidan, and co-defendants J. Rodriguez, S. Rodriguez, and Wong in the above-captioned criminal action, charging Zeidan in three of the six counts, as follows:

- o Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. §
  1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, beginning on July
  22, 2020 and continuing through September 2020 (Count 1).

- Attempted Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, on or about August 29, 2020 (Count 2).

- Firearms Conspiracy, in violation of 18 U.S.C. § 924(o), against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, from on or about July 1, 2020 through January 8, 2021 (Count 6).

(Doc. 1).[1] At Zeidan's arraignment and entry of a plea of not guilty in this action on May 31, 2024, the Government again did not seek Zeidan's detention and Zeidan was released by Judge Saporito on the conditions previously imposed in criminal action 3:22-cr-72.

Zeidan was severed from his co-defendants for purposes of trial. On June 21, 2024, following an eight-day jury trial, Defendants Wong and S. Rodriguez were found guilty on all six of the counts set forth in the Indictment.[2]

A jury trial on Counts 1, 2, and 6 of the Indictment against Zeidan is currently scheduled to commence on January 28, 2025 (Doc. 187).

On August 29, 2024, a violation notice from the U.S. Probation Office was submitted to this Court stating that upon reporting to pretrial services in Allentown, PA, on November 9, 2023, Zeidan tested positive for THC and admitted to having smoked marijuana the day

---

[1] On May 31, 2024, the Court dismissed the Indictment in criminal action 3:22-cr-72 against all pending Defendants following its grant of the Government's "Motion to Dismiss Indictment and Incorporate Court Filings into Docket No. 3:24-CR-139" (3:22-cr-72, Doc. 288, 289).

[2] Pursuant to a signed plea agreement (Doc. 69), co-defendant J. Rodriguez entered a guilty plea before this Court on May 31, 2024, and did not proceed to trial.

prior. Although Defendant has a medical marijuana card, he was informed that the use of marijuana and/or THC products is a violation of his federal pretrial release. Defendant was warned that continued use of controlled substances may result in this Court's intervention.

On September 4, 2024, the U.S. Probation Office submitted a Violation Report to the Court, informing the Court that probation believed Zeidan violated Standard Conditions # 3, 7(b), and 7(m) of his conditions of release, specifically, that he "must advise the Court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number," that he "must continue to actively seek employment", and that he "shall not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner."

The Violation Report stated that Zeidan sent a text message to his United States Pretrial Services Officer on August 28, 2024, informing probation that he had moved to Paterson, New Jersey, after a dispute with his girlfriend wherein she asked him to permanently leave her residence in East Greenville, Pennsylvania. Zeidan left the residence in the evening of August 27, 2024, traveled to Paterson, New Jersey, and was residing with a cousin. Defendant was thereafter instructed to report on August 28, 2024, to the pretrial services office in Allentown and he did so. At the meeting, Zeidan denied the presence of firearms, illicit controlled substances, or illegal activity at his new address and stated that the District of New Jersey was his only viable living option. Zeidan submitted to an observed urine screen, which was positive for the presence of THC. Zeidan admitted to

5

having used THC on or about August 24, 2024.  The sample was sent for laboratory

confirmation.  On September 3, 2024, laboratory test results reported the presence of THC

and cocaine.

Probation further informed the Court that from May 2024 to June 2024, Zeidan was

employed at a baking company in Newark, New Jersey, but, at the time of the Violation

Report on September 4, 2024, was unemployed.

On September 5, 2024, the Government filed a Motion for Revocation of Release

and Issuance of a Summons (Doc. 173) based on the alleged violations set forth herein.

Chief Magistrate Judge Daryl Bloom held a hearing on September 16, 2024,

following which he granted the Government's Motion and ordered Zeidan detained.

At the hearing before Judge Bloom, Defendant, through counsel, admitted that he

had moved to New Jersey following an argument with his then-girlfriend, but asserted that

he had immediately notified his counsel and Probation.  (Sept. 16, 2024, Hr'g Tr., Doc. 193,

at 3-4).  The Probation Officer present at the hearing affirmed that Zeidan did immediately

notify his supervising officer.  (*Id*. at 5).  Zeidan and his counsel further informed the Court

that Zeidan had been employed full-time at a Buick GMC car dealership in New Jersey for

the last two weeks at the time of the hearing.  (*Id*. at 4-5).

Defendant further admitted, through counsel, that he had used marijuana on August

24, 2024, understood that he is not permitted to use illegal substances, and that he "would

not make that mistake again."  (Sept. 16, 2024, Hr'g Tr., at 4, 6).  However, Zeidan denied

the use of cocaine and speculated that "maybe there was a small amount that somehow got into his system" unbeknownst to him.  (*Id*. at 6-7).

Upon consideration of the information presented at the hearing, Judge Bloom first stated that he did not believe Defendant's first reported use of marijuana in November of 2023 to be "much of an issue", particularly where Zeidan admitted to the violation.  Judge Bloom also found Defendant's move to Patterson, New Jersey, without prior approval, to be "de minimus" and did not see Defendant's employment history, or any lack thereof, as "significant." (Sept. 16, 2024, Hr'g Tr., at 11).

> However, what I do see as significant is that we have now a second test on September 3rd, 2024. The lab reports that it was a positive for both THC and cocaine. We do not have an admission to cocaine. Whether or not that was knowingly ingested or not, I'm not able to answer. But what's significant is that we have now a second time, after being admonished the first time regarding controlled substance use, now I'm guided by the law; and what the law provides and what's the interesting part of the law is where there's a violation, this Court's instructed that -- and I'll read from the statute -- The judicial officer shall enter an order of revocation in detention if, after a hearing, the judicial officer -- and there's additional information finds – that the person is unlikely to abide by any condition or combination of conditions of release. And that's the applicable language that I have to apply here and am required to apply.
>
> And while I think that the -- in terms of the -- the significance of this violation, the most recent violation is -- is not as great certainly as other criminal conduct, I'm required to make a decision and a determination about whether or not he's likely to abide by any condition or combination of conditions, however great, however, small. And while I consider this one of the -- one of the smaller obligations or conditions of his release, I don't have a reasonable surety or believe that it's unlikely that he will not commit any additional further violations of the conditions of his release.

(*Id*. at 11-12).  Judge Bloom later further explained:

. . . I'm guided by a number of things, and one of which is the recency of the use of the controlled substance, the marijuana. And as you are aware, that the marijuana card in Pennsylvania would not allow you to smoke marijuana anyway. So that's one of the things that I am guided by. And I also look to some of the things in your past regarding -- and while I find and I'm not holding those against you in terms of the acts, I do see that you have a history of violations of the conditions of your probation in the past. That was back in 2020. And so there are – some time has lapsed.

But in terms of the actual whether or not I believe that there is going to be additional violations, I don't have any confidence that there won't be additional violations.

(*Id.* at 13-14).[3]

---

[3] Judge Bloom's quotation and legal reference to a statute are found in 18 U.S.C. § 3148, which governs sanctions for violation of a release condition.  The statute provides that "a person who has been released under section 3142 of this title [release or detention of a defendant pending trial], and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."  18 U.S.C. § 3148(a).  It further states, in relevant part:

> . . . The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--
> **(1)** finds that there is--
>> **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>> **(B)** clear and convincing evidence that the person has violated any other condition of release; and
> **(2)** finds that--
>> **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).  Upon review of the detention hearing transcript and the evidence and other documents before this Court, the undersigned agrees with Judge Bloom's determinations that Zeidan's pre-trial release should be revoked.  For the reasons set forth by Judge Bloom, as well as those set forth in more detail in this memorandum opinion, there is clear and convincing evidence that Zeidan violated several conditions of his release and that Zeidan is unlikely to abide by any condition or combination of conditions of release.

Following Judge Bloom's order of detention, Defendant Zeidan filed a "Motion Seeking Revocation of Detention Order" (Doc. 181) and supporting brief (Doc. 182) which included as exhibits a "letter of reference" from the General Sales Manager of Buick GMC and a letter from Tamara Zeidan, the defendant's sister (Doc. 182, at 7, 8; *see also*, Doc. 198 (second letter from Ms. Zeidan)). Defendant's motion requests a hearing before this Court to review Judge Bloom's detention order. The Government filed a brief in opposition to Defendant's motion (Doc. 192) to which Defendant filed a Reply (Doc. 195).

## II. ANALYSIS

Review of a detention order is governed by 18 U.S.C. § 3145(b) which provides as follows:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). As summarized in *United States v. Rizzo*, 2021 WL 409838 (W.D. Pa. 2021):

> [a] district judge exercises de novo review over a detention order entered by a magistrate judge. *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985). "De novo review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, No. 2:09-CR-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009) (citations omitted). A district court may further incorporate the transcript of the hearing before the magistrate judge, including any exhibits admitted therein. *United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). The district court "may also consider any additional evidence or proffers submitted in conjunction

with any supplemental proceedings." *Burgess*, No. 2:09-CR-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009) (quoting *United States v.Farris*, 2008 WL 1944131, *7 (W.D. Pa. 2008)).

2021 WL 409838, at *2.

The Bail Reform Act of 1984 requires, in part, a judicial officer to determine whether a person charged with an offense shall be released or detained pending trial. *See* 18 U.S.C. § 3142. The statute dictates that "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Subsection (g) instructs:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . .

18 U.S.C. § 3142(g).

In conducting a *de novo* review of Judge Bloom's detention order, the Court agrees with Judge Bloom's determinations and further finds that there are no condition or combination of conditions that will reasonably assure the safety of any other person and the community.  This Court's conclusion is supported by a review of the parties' briefs and exhibits and the transcript of the detention hearing.  In addition, unlike Judge Bloom, having presided over the jury trial of co-defendants Steven Wong and Solomon Rodriguez, the Court has a detailed knowledge of the alleged factual bases of the specific charges against Zeidan and the weight of the evidence against him.[4]

Here, Zeidan is charged with participating in a Conspiracy to Interfere with Commerce by Robbery (Count 1) and a Firearms Conspiracy (Count 6), as well as Attempted Interference with Commerce by Robbery (Count 2).  The Conspiracy in Count 1 charges Zeidan and his co-conspirators with the commission of robberies "in that defendants conspired to unlawfully take and obtain property from other persons by entering their home with firearms and stealing controlled substances and U.S. currency, in their presence, and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property" (Doc. 1).  The Conspiracy set

---

[4] The parties should not understand the Court's statements as to its familiarity with this case or the evidence presented at Zeidan's co-defendants' trial as implying any opinion as to Zeidan's guilt or innocence on the charges against him.

forth in Count 6 charges Zeidan and his co-conspirators with "knowingly and intentionally brandish[ing], carry[ing], and us[ing] firearms during and in relation to, and possess[ing] firearms in furtherance of, crimes of violence, that is the interference with commerce by robbery. . . " (*Id.*).  Count 2 charges Zeidan and three co-defendants with attempted interference with commerce by robbery on August 29, 2020, "in that defendants did unlawfully attempt to take and obtain property consisting of cash and controlled substances from individuals in Schuylkill, Pennsylvania, in their presence, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons" by "display[ing] firearms and threaten[ing] force". (*Id.*).  All three of the charges at issue involve the alleged possession and use of firearms.  Counts 1 and 2 also specifically reference the theft or attempted theft of controlled substances.

The specific charges against Zeidan stem from his alleged involvement in the attempted robbery of a drug dealer's home on August 29, 2020.  Several witnesses presented at the trial of Wong and S. Rodriguez testified that the individuals involved in this attempted robbery were armed with firearms, including a machine gun, and that one individual had a knife.  In addition to the testimony of those individuals who were home at the time of the attempted robbery, there is also testimony from alleged co-conspirators as to Zeidan's relationship with certain other members of the alleged conspiracies, his involvement in the events of the attempted robbery, and Zeidan's participation in the events which occurred immediately subsequent to the attempted robbery.  Defendant's own Reply

brief implicitly admits that Zeidan was present at the time of the August 29 attempted robbery, stating that "since being arrested on this case the Defendant has maintained that his involvement was under duress" (Doc. 195, at 5).

Although only briefly summarized herein, upon thorough review, the Court determines that the nature and circumstances of the crimes charged and the weight of the evidence against Zeidan both weigh against the defendant, and specifically, a finding that a condition or combination of conditions exists which would reasonably assure the safety of any other person and the community.

Zeidan's history and characteristics also do not aid his assertions that Judge Bloom erred in ordering his detention. Here, the Pretrial Services Report prepared by Probation Office for the Middle District of Pennsylvania prior to Defendant's initial arraignment and detention hearings in November, 2023, sets forth 11 arrests prior to the current criminal actions, including a felony conviction for Robbery in 2009 and, more recently, convictions for simple assault in 2018, retail theft in 2019 and 2020, and use and/or possession of drug paraphernalia and driving while operating privileges suspended or revoked in 2020. The Report further states that Zeidan has reported a history of cannabinoids abuse beginning at age 17.

While Zeidan's history and characteristics support a finding that no condition or combination of conditions will reasonably assure his appearance as required and the safety of any other person and the community, it also strongly supports Judge Bloom's conclusion

that Zeidan's pre-trial release was subject to revocation because Zeidan was "unlikely to

abide by any condition or combination of conditions of release", 18 U.S.C. § 3148(b).  At the

detention hearing, Zeidan admitted to his use of marijuana in November of 2023 and August

of 2024.[5]  The Court agrees with Judge Bloom that the November, 2023, violation, by itself,

is of minimal concern.  However, the current record demonstrates that Zeidan has self-

reported issues relating to the abuse of marijuana for over a decade and that he has

continued to use it after being specifically informed that he was not legally permitted to do

so and warned that the further use of a controlled substance may result in the Court's

intervention.  Zeidan now has tested positive for the use of marijuana and cocaine in August

of 2024.  As noted by the Government, Zeidan has also at least twice previously violated the

conditions of bail or post-conviction supervision in other courts (see Doc. 192, at 12

("According to the Pretrial Services Report, the defendant also has several previous

violations of either bail, or post-conviction supervision. On January 5, 2022, he was re-

sentenced to 2 to 12 months incarceration in Northampton County, Pennsylvania, for a

probation violation.  On July 21, 2020, his bond was revoked in another Northampton

County case.")).

---

[5] It is undisputed that Zeidan was aware that he was prohibited from using marijuana while on federal pre-trial release.  Thus, the fact that Zeidan possesses a medical marijuana card is of no import to this Court's analysis.

Finally, in looking to the nature and seriousness of the danger to the community that would be posed by Zeidan's release, the Court finds that there is clear and convincing evidence that no conditions of release would reasonably ensure the safety of the community. As previously noted, Zeidan has a significant criminal history. Although many of the criminal offenses are dated and are not felonies, where Zeidan's current charges involve attempted robbery and the use of firearms, it is of note that Zeidan has previously been convicted of several crimes involving theft, including robbery in 2009 and retail theft in 2019 and 2020, and also has a conviction for simple assault in 2018. Zeidan has additionally demonstrated an unwillingness to comply with the directions of this Court and the U.S. Probation Office by, at least twice, using illicit controlled substances despite knowing he was prohibited from doing so.

For the foregoing reasons, the Court finds that the § 3142(g) factors weigh in favor of detention where there are no conditions of release that will reasonably assure the safety of any other person and the community. Further, the Court agrees with Judge Bloom that, pursuant to § 3148, there is clear and convincing evidence that Zeidan violated several conditions of his pre-trial release and that he is unlikely to abide by any condition or combination of conditions of release.

### III. CONCLUSION

For the reasons set forth herein, Defendant Zeidan's "Motion Seeking Revocation of Detention Order" (Doc. 181) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge